United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CIRINA JUSTO MARIANO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ENRIQUE VALENCIA VILLA, et al., <br><br> Defendants. | Case No. 5:16-cv-03467-EJD <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 50 |

Plaintiff Cirina Justo Mariano alleges that her landlord, Defendant Enrique Villa, sexually assaulted her two minor children, Plaintiffs A.C.G. and A.D.G, and discriminated against them on the basis of gender and national origin. Plaintiffs allege that Enrique and his son, Arturo Villa, created a hostile living environment and retaliated against Plaintiffs for reporting the crime to the police. Plaintiffs allege that the property owner, Rigoberto Villa, is vicariously liable for Enrique's and Arturo's wrongdoing.

Plaintiffs now move for partial summary judgment on their claims against Rigoberto and Arturo. Plaintiffs' motion will be DENIED because there are factual disputes regarding Arturo's actions and the agency relationship between Rigoberto, Enrique, and Arturo.

1
Case No.: 5:16-cv-03467-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. BACKGROUND

Rigoberto has owned a four-unit apartment building in San Jose, California, since 2000. Pls.' Reply Separate Statement of Undisputed Material Facts ("Separate Statement") 2, Dkt. No. 56-1. He testified that he has never lived there. Dkt. No. 53-1 at 43. Mariano moved into one of the apartments in 2009. Separate Statement 3–4. Mariano's minor children, A.C.G. and A.D.G., moved in with her in 2013. Id. at 4. Rigoberto's brother Enrique worked as the building's property manager and lived in one of the apartments. Id. at 2–3.

Plaintiffs allege[1] that on October 18, 2015, A.C.G. and A.D.G. were cleaning Enrique's apartment when he kissed and hugged both of them, touched both of them on the buttocks, and put his hand on A.C.G.'s vagina. Id. at 5. Enrique asked A.C.G "how much she wanted for her virginity" and asked both of them for their virginity in exchange for an apartment. Id. at 6. The girls fled and told their family what happened. Id. at 7. The family immediately confronted Enrique, who called them "wetbacks" and said: "I asked her how much she wanted for her virginity." Id.  The family called the police, and Enrique was arrested that day and charged with false imprisonment and lewd acts with a child. Id. at 8. At some later date, A.C.G. saw Enrique looking at her while sitting in his car outside of her school. Id. at 9.

Around November 1, 2015, Enrique asked his son Arturo to take over as property manager. Id. at 3. Arturo agreed and Rigoberto approved. Id. On November 11, Arturo served on Plaintiffs a three-day notice to cure or quit. Id. at 9. On that same day, Arturo also served a 60-day notice to terminate tenancy. Id. at 10. As discussed below, the parties disagree about Arturo's motives and the extent to which Enrique directed Arturo to serve the notices. Id. at 9–10. Arturo managed the property until July 2016. Id. at 3.

On November 20, A.C.G. obtained a civil harassment temporary restraining order against Enrique. Id. at 11. Plaintiffs moved to a new residence in February 2016. Id. A five-year restraining order issued on March 8, 2016. Id. at 12. On June 16, the Santa Clara County Superior

---

[1] As discussed below, Rigoberto and Arturo dispute this narrative on the grounds that it is based on inadmissible evidence.

2
Case No.: 5:16-cv-03467-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Court held a preliminary criminal hearing, at which A.C.G. and A.D.G. testified. Id. At an unspecified time, Enrique fled the country and has not appeared in this action. Id. at 13.

Plaintiffs now move for summary judgment against Rigoberto and Arturo on their claims for (1) violation of the federal Fair Housing Amendments Act ("FHA"), 42 U.S.C. §§ 3604, 3617 (claim one, Compl. ¶¶ 56–59); (2) violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12955 (claim two, Compl. ¶¶ 60–63), (3) violation of the California Unruh Civil Rights Act, Cal. Civ. Code § 51 (claim three, Compl. ¶¶ 64–70), and (4) breach of the covenant of quiet use and enjoyment (claim seven, Compl. ¶¶ 90–95). Pls.' Mot. for Partial Summ. J. ("MSJ"), Dkt. No. 50.

## II. LEGAL STANDARD

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Samuels v. Holland American Line—USA Inc., 656 F.3d 948, 952 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). The Court "must draw all reasonable inferences in favor of the nonmoving party." Id. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## III. DISCUSSION

### A. The Court need not resolve Defendants' evidentiary challenges.

Defendants object to Plaintiffs' evidence in support of their allegations that Enrique sexually assaulted A.C.G. and A.D.G. and later retaliated against Plaintiffs for calling the police. Defs.' Opp'n to Pls.' Mot. for Partial Summ. J. ("Opp'n") 7–10, Dkt. No. 55.

First, Plaintiffs offer transcripts from the depositions of A.C.G. and A.D.G. in this case. Warren Decl. Exs. D, E, Dkt. No. 53. Defendants argue that the transcripts are inadmissible because Plaintiffs have not declared that their contents are true. Opp'n 8.

Second, Plaintiffs' summary judgment motion includes a declaration from Mariano (Dkt. No. 52), to which Defendants object because it is "self-serving" and "conclusory," and because

3

Case No.: 5:16-cv-03467-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Mariano has no personal knowledge about what happened between Enrique and the minor Plaintiffs. Opp'n 8.

Third, Plaintiffs request judicial notice of several documents, including transcripts of the minor Plaintiffs' testimony from earlier criminal proceedings, copies of the restraining orders against Enrique, and police reports documenting the incident and Enrique's arrest. Dkt. No. 52. Defendants argue that judicial notice of these materials is inappropriate because their factual contents are in dispute. Opp'n 8–10.

For the purposes of this motion, the Court need not decide whether this evidence is admissible. As explained below, even if the evidence were admitted, factual disputes preclude summary judgment.

### B. Factual disputes preclude summary judgment on Plaintiffs' claims against Arturo.

Plaintiffs allege that Arturo served retaliatory eviction notices in violation of the FHA, the FEHA, and the covenant of quiet use and enjoyment. MSJ 12–17. To establish a claim for retaliation under the FHA, a plaintiff must show that (1) she engaged in a protected activity, (2) the defendant subjected her to an adverse action, and (3) a causal link exists between the protected activity and the adverse action. Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001). A retaliation claim "may be based upon discriminatory conduct which is designed to drive the individual out of his or her home." Egan v. Schmock, 93 F. Supp. 2d 1090, 1093 (N.D. Cal. 2000). The FEHA provides analogous protections. See Pack v. Fort Washington II, 689 F. Supp. 2d 1237, 1248 (E.D. Cal. 2009) ("California courts rely on federal housing discrimination law to interpret analogous provisions of FEHA. . . . Therefore, violations of The Fair Housing Act will also constitute violations of the parallel provisions of FEHA." (citation omitted)). In addition, a breach of the covenant of quiet use and enjoyment occurs when a landlord's act or omission "substantially interfere[s] with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy." Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2005).
4
Case No.: 5:16-cv-03467-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

On November 11, Arturo served on Plaintiffs a three-day notice to cure or quit. Separate Statement 9. On the same day, Arturo also served a 60-day notice to terminate tenancy. Id. Plaintiffs argue that Arturo served these notices in "retaliat[ion] against Plaintiffs for exercising their right to be free from sexual harassment." MSJ 13. To show that he acted in retaliation, Plaintiffs cite Arturo's deposition testimony, in which he says that he served the notices to help Enrique:

> Q: [Y]ou said that under the section where it says, You are hereby notified that you are in violation of the lease or rental agreement under which you occupy these premises because you violated the covenant to, and under that is some handwritten language, that's your writing; correct?
> A [Arturo]. Yes.
> Q. You wrote that?
> A. Yes.
> Q. Did your father instruct you to write that?
> A. Yes.
> Q. He did?
> A. Uh-huh.
> Q. What did he tell you to do?
> A. To note it like that.
> Q. Why did he tell you to do that?
> A. To help him out.
> Q. How did he say it would help him out?
> A. Writing it.
> Q. So why did your father ask you to write that?
> A. I wouldn't know.
> . . .
> Q. Why did he ask you to serve the three-day notice?
> A. I wouldn't know. I didn't ask.
> . . .
> Q. Did your father say why he wanted you to deliver a 60-day notice?
> A. No.
> Q. Why did you think you were delivering a 60-day notice?
> A. I have no clue.

Arturo Dep., Dkt. No. 53 at 99:1–103:10. Arturo denies that the notices were retaliatory. Opp'n 12. Arturo further testified that he believed that notices were justified because Plaintiffs "were selling food and other items from their house":

5
Case No.: 5:16-cv-03467-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

> Q. Why did you give him [the three-day notice]?
> A [Arturo]. They were selling food and other items from their house.
>
> Q. How do you know that?
> A. I've seen people with trays walking up and down the stairs.
> Q. When did you see that?
> A. Often.
> . . .
> Q. Why did you—what—why did you serve this?
> A. 'Cause—to stop them from selling food and beer from their place.

Arturo Dep. 95:21–96:3, 97:6–9.

The Court finds that a factual dispute exists as to whether Arturo retaliated against Plaintiffs by serving the two eviction notices. In the deposition excerpts quoted above, Arturo testified that he served the notices at Enrique's direction, but there is no proof that Arturo intended the notices to be retaliatory, or that he was aware that Enrique was instructing him to act in retaliation. Plaintiffs' motion for summary judgment will be denied as to their claims against Arturo for violations of the FHA, FEHA, and the covenant of quiet use and enjoyment. Plaintiffs' motion will also be denied as to their Unruh Act claim against Arturo because they have not explained how Arturo's actions constituted an Unruh violation.

### C. Factual disputes preclude summary judgment on Plaintiffs' claims against Rigoberto.

Plaintiffs argue that Rigoberto is vicariously liable for Enrique's "quid-pro-quo requests for sexual relations," his "racial and ethnic slurs," and his "hostile and retaliatory acts" following his sexual battery of the minor Plaintiffs. MSJ 13; Pls.' Reply in Support of Mot. for Summ. J. ("Reply") 9, Dkt. No. 56. As discussed above, Defendants argue that Plaintiffs cannot establish that Enrique committed these acts because Plaintiffs' allegations are based on inadmissible evidence. However, even if the Plaintiffs' evidence were admissible, the Court finds that factual disputes exist as to whether Enrique acted within the scope of his agency relationship with Rigoberto.

"[P]rincipals or employers [are] vicariously liable for acts of their agents or employees in

the scope of their authority or employment." Meyer v. Holley, 537 U.S. 280, 285–86 (2003). If an agent or property manager violates FHA requirements, the property owner may be vicariously liable for those violations. Id. at 285. "[A]n employer's vicarious liability may extend to willful and malicious torts of an employee as well as negligence." Farmers Ins. Grp. v. Cty. of Santa Clara, 11 Cal. 4th 992, 1004 (1995).[2] However, "an employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee substantially deviates from the employment duties for personal purposes." Id. at 1004–05. "If an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior." Id. at 1005 (quoting Alma W. v. Oakland Unified School Dist., 123 Cal. App. 3d 133, 139 (1981)).

Before the alleged sexual battery, Enrique had "a good relationship" with the Mariano family. Separate Statement 4. According to Mariano, Plaintiffs and Enrique were on friendly terms, and they shared an apartment for about a year. Mariano Dep. 31:7–8, 56:16–57:1, Dkt. No. 53 Ex. C. She considered him a friend and cleaned his house once a week, sometimes with assistance from A.C.G. and A.D.G. Id. at 64:4–21. On at least three occasions, Enrique invited Plaintiffs to join him and his son on trips to an amusement park. Id. at 59:8–60:11. Enrique was known as the "godfather" of A.C.G. and A.D.G. Id. at 61:18–64:2.

Plaintiffs do not allege that Rigoberto is vicariously liable for the sexual battery itself. Reply 9. Rather, they allege that Rigoberto is liable for Enrique's quid pro quo request (i.e., offering an apartment in exchange for the girls' virginity) and his racial slurs (i.e., referring to the Mariano family as "wetbacks"). While it is true that an employer can be liable for an employee's intentional torts, the employer will not be liable if the employee "substantially deviates from the employment duties for personal purposes." Farmers Ins., 11 Cal. 4th at 1004–05. Here, Plaintiffs'

---

[2] California state law "is instructive to the extent it helps delineate the traditional respondeat superior and agency principles." Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 776 n.4 (9th Cir. 2002) (quotation marks omitted).

7
Case No.: 5:16-cv-03467-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

evidence does not establish that Enrique's acts occurred within the scope of his employment. According to Plaintiffs, the battery and related acts occurred while A.C.G. and A.D.G. were cleaning Enrique's apartment, which apparently happened regularly (although not without their mother present) in the course of a longstanding personal relationship. MSJ 3. Enrique may have attempted to take advantage of his position to coerce A.C.G. and A.D.G. into sexual activity, but the Court finds that factual disputes exist as to whether Enrique's slurs and quid pro quo request were related to his employment duties. There are also factual disputes as to whether Enrique's alleged stalking at A.C.G.'s school was within the scope of the agency relationship.

Plaintiffs also allege that Rigoberto is liable for Enrique's "retaliatory acts." MSJ 13; Reply 9. Plaintiffs claim that, about two weeks after the incident, Enrique directed Arturo to serve a three-day notice to cure or quit (Separate Statement 9) and a 60-day notice to terminate tenancy (id. at 9–10). Other than the timing of the notices, Plaintiffs offer no evidence that the notices were retaliatory. Arturo's testimony regarding the notices, discussed in the previous section, does not establish that Enrique or Arturo acted with retaliatory intent. As such, factual disputes preclude summary judgment against Rigoberto on Plaintiffs' retaliation claims.

## IV. CONCLUSION

Plaintiffs' motion for partial summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: June 20, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-03467-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

8